IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:20-cv-02829-DDD-NRN

BRANDI MARTIN, individually and as parent and next friend of L.W., a minor

Plaintiffs,

v.

DENVER PUBLIC SCHOOLS f/k/a School District No. 1 in the City and County of Denver d/b/a Denver Public Schools, a Colorado public entity;
THOMAS PELKEY, individually and in his official capacity as school bus driver with DENVER PUBLIC SCHOOLS;

Defendants.

---

**MOTION TO DISMISS**
---

Defendants Denver Public Schools ("DPS") and Thomas Pelkey, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), move to dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.[1]

**INTRODUCTION**

On September 18, 2019, a disturbance arose on a DPS school bus transporting middle school students, including Plaintiff L.W., from Denver Green School Northfield ("School"), causing the bus to make two unscheduled stops at locations which were not designated bus stops. During the second unscheduled stop, a chaotic scene ensued when adults arrived and demanded that students be immediately released. DPS bus driver, Defendant Thomas Pelkey, received instructions from a DPS dispatcher not to release students to parents until they first obtained the

---

[1] Counsel certifies that the parties conferred and that this motion is opposed.

students' names because DPS retained custodial responsibility for the students on the bus. One parent, Plaintiff Brandi Martin, forced herself onto the bus, and got into a physical altercation with Pelkey and now-deceased DPS bus paraprofessional, Ernest Makwosky, and was arrested for assault at the site of the incident.

Plaintiff L.W. brings a claim under the Fourth Amendment to the U.S. Constitution for illegal search and seizure because she, along with the other students on the bus, was not permitted to exit the bus when it was stopped at an undesignated stop during an unsafe situation. Students in public schools do not enjoy the same Fourth Amendment protections as adults while under school control given the custodial responsibility of schools and DPS violated no constitutional right of L.W. by not permitting her to exit the bus. Plaintiffs' remaining claims are state law tort claims of which the Court should not exercise supplemental jurisdiction and are, nonetheless, barred by the Colorado Governmental Immunity Act ("CGIA").

## PLAINTIFFS' ALLEGATIONS

Plaintiff L.W. was a student at the School. (Am. Compl., Dkt. #16, ¶ 8.) On September 18, 2019, at around 4:15 p.m., Pelkey and Makowsky picked up middle school students from the School, including L.W., to take them to their designated stops. (*Id*. ¶ 9.) Certain students on the bus began singing and dancing and Makowsky became concerned with their behavior and asked them to tone it down. (*Id*. ¶¶ 11–12.) There was some back and forth between the students and Makowsky and he asked Pelkey to stop the bus. (*Id*. ¶¶ 13–16.) While the bus was stopped, many students began to scream, and some students called their parents. (*Id*. ¶ 16.) Once the students quieted down, Pelkey began driving again and Makowsky announced that at the next stop, he would need to take all of the students' names, and they were not permitted to get off the

bus. (*Id.* ¶ 17.) Pelkey then stopped the bus at an undesignated stop and parents began to arrive. (*Id.* ¶¶ 18–19.)

Parents and students asked for the students to be let off the bus, but Pelkey and Makowsky did not permit the students to exit the bus at this point. (*Id.* ¶ 19.) Some students were screaming and crying, and one parent was banging on the front door of the bus, and Pelkey called DPS bus dispatch for assistance. (*Id.* ¶ 20.) The DPS dispatcher advised Pelkey to obtain the names of students before releasing them to their parents. (*Id.* ¶ 21.) When students tried to get off the bus, Pelkey and Makowsky would not permit them to do so, blocking the exit. (*Id.* ¶ 22.) Pelkey called dispatch again and requested assistance from the Denver Police Department. (*Id.*) An alarm began to sound on the bus after a student opened the back door to the bus in an attempt to exit. (*Id.* ¶ 24.) Pelkey tried to shut the back door but two adult males stopped him from doing so. (*Id.* ¶ 25.) As a result, Pelkey used his arm to prevent students from exiting the back of the bus. (*Id.* ¶ 25.) Students were screaming and Martin, who was outside near the open back door, forced her way onto the bus. (*Id.* ¶ 26)

Once Martin was on the bus, a physical altercation ensued between Martin, Pelkey, and Makowsky. (*Id.* ¶¶ 27–28.) Martin exited the bus and shortly after, officers from the Denver Police Department arrived and arrested Martin. (*Id.* ¶ 31.) The Denver District Attorney's Office later decided not to pursue charges against Martin. (*Id.* ¶ 32.)

## LEGAL STANDARD

A claim may be dismissed under Rule 12(b)(6) "either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004).

Well-pleaded factual allegations must be accepted as true and construed in the light most favorable to the plaintiff. *E.g.*, *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Immunity under the CGIA is a subject-matter jurisdiction question and determined under Fed. R. Civ. 12(b)(1). *Romero v. Denver Pub. Sch., Dist. No. 1*, 2010 WL 1235635, at *2 (D. Colo. Mar. 18, 2010); *see also L.J. v. Carricato*, 413 P.3d 1280, 1288 (Colo. App. 2018). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Martin v. Perman*, 2020 WL 838483, at *2 (D. Colo. Jan. 30, 2020). If needed, the Court "may allow limited discovery and conduct an evidentiary hearing—a *Trinity* hearing—to determine jurisdiction." *L.J.*, 413 P.3d at 1288.

## ARGUMENT

### I.  Plaintiff L.W.'s Search and Seizure Claim Fails as a Matter of Law.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend, IV. The Fourth Amendment applies in the school setting. *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1250 (10th Cir. 2008) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 336–37 (1985)). However, the requirement of "probable cause before conducting a seizure . . . does not apply in schools" because "such a standard 'would unduly interfere with the maintenance of the swift and informal disciplinary procedures [that are] needed.'" *Id.* (quoting

*Board of Educ. of Indep. School Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 828–29 (2002)). "To balance the students' privacy rights with the 'schools' custodial and tutelary responsibility for children,' . . . a seizure need only be 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id*. (citation omitted).

The first step in the analysis is to determine whether there was a seizure. "To qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." *Id*. at 1251. "Students are generally not at liberty to leave [school facilities] when they wish." *Id*.; *see also Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995) ("Once under the control of the school, students' movement and location are subject to the ordering and direction of teachers and administrators. 'Unemancipated minors lack some of the most fundamental rights of self-determination—including even the right to come and go at will.'") (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). Here, L.W. was on a school bus when it was stopped at an undesignated stop and Pelkey did not allow her or any other student to exit the bus after a disruption or during a chaotic scene with children screaming and parents banging on the bus doors. Further, there are no allegations in the Amended Complaint that Pelkey or Makowsky knew or was told that L.W.'s mother, Martin, was outside the bus and requesting that she be let off. Based on the allegations in the Amended Complaint, there was no seizure and the first claim must be dismissed.

Even if there was a seizure, the allegations in the Amended Complaint establish that it was justified at its inception and reasonable in its scope. As alleged, Pelkey stopped the bus due

to a disturbance on the bus and DPS dispatch told him not to let students off until names of the students were taken.  At this time, parents began arriving and one parent was banging on the bus door and students were screaming.  Pelkey and Makowsky did not permit students to exit the bus at this time and sought police assistance.  "[I]n the context of a public school, a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." *Wallace by Wallace*, 68 F.3d at 1014.  "[A]t bottom," the Fourth Amendment inquiry in the school context is "whether under the circumstances presented and known the seizure was objectively unreasonable." *Id*.  Objectively, under the circumstances as alleged in the Amended Complaint, any seizure was justified at its inception and reasonable in its scope.

Based on the face of the Amended Complaint, L.W.'s Fourth Amendment claim fails because there was no seizure and even if there was, it was justified under the circumstances.

**II.     Pelkey is Entitled to Qualified Immunity from the Fourth Amendment Claim.**

Qualified immunity shields government officials from liability for civil damages if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once raised, a "heavy two-part burden" shifts to a plaintiff.  *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).  "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quotation omitted).  "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to

be 'indisputable' and 'unquestioned.'" *Lobozzo v. Colo. Dep't of Corrs.*, 429 F. App'x 707, 710 (10th Cir. 2011).

There is no clearly established law that would have put Pelkey on notice that preventing L.W. from exiting the bus at an undesignated stop during a disturbance would violate her Fourth Amendment rights. Rather, the authority from the Tenth Circuit and the U.S. Supreme Court is that "[s]tudents are generally not at liberty to leave [school facilities] when they wish." *Couture*, 535 F.3d at 1251. Further, in *Ebonie S. v. Pueblo School District 60*, 695 F.3d 1051, 1054 (10th Cir. 2012), the court considered whether a special type of desk used for disruptive students that secured the student in the desk constituted an unreasonable seizure. *Id*. at 1055. The court held there was no unreasonable seizure and distinguished cases where a seizure was found to be unreasonable in the school environment. In those cases, the court found students had been "[p]hysically b[ound]," e.g., handcuffs or being taped to a tree. *Id*. at 1057 (citing cases). Here, the extent of the alleged seizure is the verbal order not to exit the bus and Pelkey placing his hand across the seats of the bus to prevent students from exiting. Fourth Amendment law in the school context would not have placed Pelkey on notice that he would violate L.W.'s constitutional rights by preventing her from exiting the bus in the circumstances he faced.

### III. The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims.

The remaining claims asserted by Plaintiffs are state law tort claims. (Am. Compl. pp. 7–12.) A federal district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The Tenth Circuit has indicated that if federal claims are dismissed before trial . . . leaving only issues of state law, the Court should decline to exercise jurisdiction over the state

claims." *Fitzgerald v. Corr. Corp. of Am.*, 2009 WL 1196127, at *5 (D. Colo. Apr. 30, 2009) (citation omitted). Because Plaintiffs' federal claim fails as a matter of law, the Court should decline to exercise jurisdiction over the remaining state claims and dismiss this case.

### IV.     Plaintiffs' State Law Tort Claims Must be Dismissed Because They Are Barred by the CGIA.

The CGIA protects public entities and their employees from liability in all claims for injury which lie in tort or could lie in tort. § 24-10-105(1) & 106(1), C.R.S. However, said immunity is waived under certain exceptions. *Id*. The only possible exception that could apply here is waiver of immunity for injuries resulting from "the operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment . . . ." § 24-10-106(1)(a), C.R.S.

Colorado appellate courts have defined the term "operation" as "actions of the operator related to physical control of the functions of the motor vehicle." *Harris v. Reg'l Transp. Dist.*, 15 P.3d 782, 784 (Colo. App. 2000). However, the term "operation" does not "extend to all tortious acts occurring on a public vehicle." *Robinson v. Ignacio Sch. Dist.*, 328 P.3d 297, 300 (Colo. App. 2014).

Two Colorado appellate court cases related to the operation of a public bus provide the framework for the analysis in this case. In *Harris*, while exiting a bus, the plaintiff slipped and fell on ice and snow that had accumulated on the interior steps of the bus. 15 P.3d at 783. The defendant argued that removal of snow and ice from the steps was related to maintenance and not required for driving the bus, and thus, was not includable in the definition of "operation." *Id*. The court disagreed and held that ensuring passengers "board and disembark safely is included in

the waiver of immunity" because "the movement of passengers into and out of a bus is a function of the bus controlled by the driver." *Id*. at 784.

In *Johnson v. Regional Transportation District*, 916 P.2d 619, 620 (Colo. App. 1995), the plaintiff was injured after she exited a public bus and was struck by another vehicle while crossing the highway. The bus driver stopped in a traffic lane across the highway from the regular bus stop to let the passenger off. *Id*. The defendant argued that the term "operation" for purposes of the CGIA, "requires that a plaintiff be injured 'by the actual movement of the vehicle or one of its parts.'" *Id*. at 621. The court disagreed, stating that with regard to motor vehicles, "operation" is not "restricted to their physical defects or movement" but includes "the stops such vehicles ordinarily make." *Id*. The court held that "negligently stopping to discharge a passenger at an improper place is part of the 'operation' of a bus for which immunity has been waived by the GIA." *Id*. at 622.

>
> **A.   The assault and battery claims must be dismissed because they do not fall under the "operation" of a motor vehicle waiver.**

Under *Harris*, *Johnson* and the language of the operation of a motor vehicle statutory waiver, Plaintiffs' tort claims for assault and battery must be dismissed. These claims are based on the allegations that Martin entered the stopped bus and Pelkey assaulted and battered her during a physical altercation. These claims are far too removed from the operation of the bus to be included in that statutory waiver of immunity. *Robinson*, 328 P.3d at 300 ("the term 'operation' does not extend to all tortious acts occurring on a public vehicle"). They are not related to the stops the bus ordinarily makes or the movement of passengers into and out of a bus or any other aspect of the "operation" of the bus. Further, the claims are not related in any way

to a function of the bus that is under the driver's control. There also are no other statutory waivers of immunity that could possibly apply. *See* § § 24-10-106(1), C.R.S.

> **B.    The negligence claim should be dismissed because, unlike in *Harris* and *Johnson*, not letting L.W. off the bus was not related to the typical "operations" of a bus.**

As an initial matter, Plaintiffs argue many discrete acts of negligence are actionable, including: "stopping the bus before the assigned stop; stopping the bus at a random location; refusing to allow students, including [L.W.], to exit the bus, threatening students, including [L.W.], and parents, including [Martin]; physically restraining and detaining students, including [L.W.], and parents; and restraining, detaining, and assaulting [Martin]." (Am. Compl. ¶ 50.) The only acts that can arguably be related to the operation of the bus are "stopping the bus before the assigned stop; stopping the bus at a random location; [and] refusing to allow students, including [L.W.], to exit the bus." The other alleged acts of negligence are far too removed from the operation of the bus and cannot form the basis for a waiver of immunity.

As for stopping the bus before the assigned stop and at a random location, these acts should not be considered separate from the act of refusing to allow the students to exit the bus. There are no plausible injuries alleged in the Amended Complaint caused by the act of the bus being stopped at an undesignated stop and they thus, cannot form the basis of Plaintiffs' negligence claim. *See HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002) (to establish negligence, "a plaintiff must show . . . that the defendant's breach caused the plaintiff's injury."); *see also Tidwell ex rel. Tidwell v. City & Cty. of Denver*, 83 P.3d 75, 85 (Colo. 2003) (plaintiff must "prov[e] that he suffered from 'injuries resulting from' conduct" listed in the waiver section of the CGIA). The only act that arguably falls under the operation of

a motor vehicle waiver and where the Amended Complaint arguably alleges injury as a result is refusing to let L.W. off the bus.  (Am. Compl. ¶¶ 19–25, 39.)

Refusing to let L.W. off the bus, should not, as a matter of law, be held to fall under the operation of a motor vehicle waiver of immunity.  In *Johnson* and *Harris*, the injuries were proximately caused by the typical operations of a bus stopping and letting passengers off.  In *Johnson*, the bus driver negligently stopped the bus in a dangerous place and the plaintiff was hit by a car immediately after exiting the bus.  916 P.2d at 621.  In *Harris*, the plaintiff was exiting the bus at a stop and slipped on ice on the bus steps.  15 P.3d at 783.  Here, Pelkey stopped the bus due to a disturbance and after the bus was stopped for a period of time, he and Makowsky did not permit students to exit the bus.  These acts are not related to the typical operations of the bus in passengers boarding and exiting or any other typical function of driving the bus, but rather are fundamentally separate from the typical operations of the bus.  The Court should not extend *Johnson* and *Harris* to find a waiver of immunity under these circumstances through the operation of a motor vehicle statutory waiver.

        **C.**       **The intentional infliction of emotional distress claim should be dismissed for the same reasons as the negligence claim.**

Like with the negligence claim, Plaintiffs assert that multiple acts of Pelkey and Makowsky resulted in emotional distress for Plaintiffs.  (Am. Compl. ¶ 63.)  However, also like with the negligence claim, the only act that can arguably fall under the operation of a motor vehicle waiver is the refusal to let students off the bus.  As explained above, the Court should not extend *Johnson* and *Harris* to find a waiver of immunity for stopping the bus due to a disturbance and not permitting students to exit.

### D. The allegations do not support that Pelkey acted willfully and wantonly.

Absent a statutory exception, public employees such as Pelkey may only be held liable for a tort if their conduct was "willful and wanton." § 24-10-105(1), C.R.S. "To be willful and wanton, public employees must be consciously aware that their acts or omissions create danger or risk to the safety of others, and they then act, or fail to act, without regard to the danger or risk." *Gray v. Univ. of Colorado Hosp. Auth.*, 284 P.3d 191, 198 (Colo. App. 2012).

The only act of Pelkey alleged in the Amended Complaint where he was arguably consciously aware that his act would create a danger or risk to the safety of others and then act without regard to that risk would be the allegations related to assault and battery. Stopping the bus at an undesignated stop and preventing students from exiting the bus, objectively, would not have made Pelkey aware that these acts created a danger of risk to the safety of students or parents. In fact, the allegations reasonably interpreted show that by stopping the bus and preventing students from exiting, Pelkey was acting to keep the students safe. Regarding the assault and battery allegations, they are that Martin entered the bus and a physical confrontation ensued with Pelkey and Makowsky. (Am. Compl. ¶¶ 27–28.) There are simply not sufficient allegations in the Amended Complaint demonstrating that attempting to prevent unknown adults from entering a school bus carrying children while awaiting law enforcement and taking reasonable physical action once the rear door was opened without authorization by them amounts to willful and wanton conduct. An opposite finding would be contrary to public policy.

Based on the allegations in the Complaint, Pelkey did not act willfully and wantonly.

### V. Plaintiffs' Intentional Infliction of Emotional Distress Claim Cannot Be Brought Against DPS.

An intentional infliction of emotional distress claim is also called a claim for "outrageous conduct" under Colorado law. *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970) (citation omitted); *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994) (calling this tort a claim for "outrageous conduct causing severe emotional distress"). Under Colorado law, public entities have absolute immunity from outrageous conduct claims. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 81 F. Supp. 2d 1090, 1096 (D. Colo. 2000) ("under Colorado law, public entities are immune from liability for outrageous conduct claims, … and such a tort claim cannot be brought against the . . . School District") (citing § 24-10-114(4), C.R.S.)); *City & Cty. of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 763 n.3 (Colo. 1992) (same); § 24-10-114(4), C.R.S. ("A public entity shall not be liable . . . for damages for outrageous conduct. . . ."). DPS is immune from liability for intentional infliction of emotional distress/outrageous conduct regardless of whether a waiver applies and this claim must be dismissed.

### VI.     Given That No Tort Claims Survive, DPS Cannot Be Held Liable Under a *Respondeat Superior* Theory.

Plaintiff's sixth claim is against DPS for liability for the state law tort claims based on the actions of Pelkey and Makowsky. As established above, none of the tort claims survive because they are barred by the CGIA and thus, there can be no liability against DPS under a *respondeat superior* theory.[2]

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Amended Complaint be dismissed in its entirety. Based on the allegations in the Amended Complaint, the tort claims

---

[2] Public entities like DPS do not waive immunity based on the willful and wanton conduct of their employees. *Gray*, 284 P.3d at 196.

are barred by the CGIA, however, should the Court determine otherwise, Defendants request a *Trinity* hearing.

RESPECTFULLY SUBMITTED this 7th day of January, 2021.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

By: *s/ Daniel P. Spivey*
M. Brent Case
Daniel P. Spivey
1120 Lincoln Street, Suite 1308
Denver, CO 80203
Telephone: (303) 595-0941
FAX: (303) 861-9608
bcase@semplelaw.com
dspivey@semplelaw.com

ATTORNEYS FOR DEFENDANTS

I hereby certify that the foregoing motion complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) as it contains 3,992 words.

## CERTIFICATE OF SERVICE

   I hereby certify that on the 7th day of January, 2021, a correct copy of the foregoing was filed and served via CM/ECF on the following:

Charles G. Crichton
Stephen C. Kaufman
Jennifer L. Crichton
Kidneigh & Kaufman, P.C.
730 17th Street, Suite 635
Denver, Colorado 80202
Telephone - (303) 393-6666
Fax: (303) 393-0132
skaufman@kandkpc.com
ccrichton@kandkpc.com
jcrichton@kandkpc.com

*Attorneys for Plaintiffs*

                    By: *s/Daniel P. Spivey*