**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:20-CV-02829-DDD-NRN

BRANDI MARTIN, individually and as parent and next friend of L.W., a minor,

    Plaintiff,

v.

DENVER PUBLIC SCHOOLS f/k/a School District No. 1 in the City and County of Denver dba Denver Public Schools, a Colorado public entity; and
THOMAS PELKEY, individually and in his official capacity as school bus driver with DENVER PUBLIC SCHOOLS;

    Defendants.

**ORDER GRANTING MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

After school on September 18, 2019, Thomas Pelkey, a school bus driver for Denver Public Schools, picked up a group of students, including Plaintiff Brandi Martin's daughter L.W., and began his drop-off route. (Amended Compl. Doc. 16 at 3.) Shortly after the bus departed, however, several students caused a disruption and Mr. Pelkey pulled the bus over. (*Id.*) Eventually, Mr. Pelkey started driving again but shortly thereafter stopped the bus at another unscheduled stop. (*Id.* at 4.) The children were told that they could not leave the bus and that their names would be collected. (*Id.*) Contacted by their children, a group of parents began congregating outside the bus. (*Id.*) Mr. Pelkey called the Denver Public Schools dispatcher, who told Mr. Pelkey not to release the students to their parents until he had obtained each of their names.

1

(*Id.*) When the children started trying to get off the bus, Mr. Pelkey again contacted the dispatcher and the Denver Police Department. (*Id.*) The back exit door to the bus was opened, and Mr. Pelkey used his arm to block the children from exiting that way. (*Id.* at 5.) Several students began trying to push through Mr. Pelkey's arm to get off the bus. (*Id.*) Ms. Martin, who had been standing outside the bus, decided to enter the bus to get L.W. (*Id.*) A physical altercation between Ms. Martin and Mr. Pelkey ensued while L.W. got off the bus. (*Id.* at 5-6.)

Ms. Martin then brought this suit, asserting claims under the Fourth Amendment of the United States Constitution and a variety of Colorado tort theories. (Doc. 16.) Defendants have moved to dismiss on several grounds. Because Mr. Pelkey is entitled to qualified immunity on the federal claims and the state claims would be best resolved in state court, the motion is granted.

## ANALYSIS

### I. Constitutional Claims & Qualified Immunity

#### A. Fourth Amendment

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. Ms. Martin appears to allege that Mr. Pelkey's actions violated this protection in two ways: by unreasonably seizing L.W. on the bus, and by using excessive force in doing so. (Doc. 16 at 7.)

In reviewing a motion to dismiss, the Court must accept well-pleaded allegations as true and must construe them in the light most favorable to the non-moving party. *Alavarado v. KOB-TV, L.L.C.*, 493 F.3d 1210,

1215 (10th Cir. 2007). The bulk of Ms. Martin's complaint, however, consists of conclusory assertions about the "unreasonable" and "unnecessary" nature of Mr. Pelkey's conduct, *see, e.g.,* Doc. 16 at ¶¶ 36, 37, which the Court need not credit. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("Mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). Viewed in the light most favorable to Ms. Martin, the actual well-pled allegations are that Mr. Pelkey twice made unscheduled stops in response to a relatively minor disturbance–several children dancing and singing in the back of the bus. When a student started to scream, Ernest Makowsky, the assistant who was present on the bus that day, told her to "shut up."[1] Before the second stop, Mr. Pelkey informed the children that he would be taking their names down before allowing anyone to leave, without differentiating between those who had caused the disturbance and those, like L.W., who had not. At the second stop, parents, who had been called by children on the bus, started to gather outside of the bus. At some point, children began to scream, cry, and beg to be let off the bus. Mr. Pelkey would not let the children off the bus, and the children became increasingly upset. Mr. Pelkey notified the parents that no one would be getting on the bus. When the back door to the bus was opened, an alarm went off and Mr. Pelkey used his arm to prevent the children from leaving. Several of the children pushed into Mr. Pelkey's arm while trying to depart.

---

[1] The Complaint also references Mr. Makowsky and attributes certain alleged actions to him as well as Mr. Pelkey. But Mr. Makowsky is no longer named as a defendant in the case, so it is not necessary to address those allegations.

The Court is dubious that these facts, even if proven, would amount to a violation of the U.S. Constitution. While Ms. Martin alludes to excessive force in her Complaint, there are no allegations that Mr. Pelkey actually touched or otherwise used actual force against L.W. Without application of force, a viable excessive force claim is hard to envision. *See generally Graham v. Connor*, 490 U.S. 386 (1989) (articulating the objective reasonableness standard for Fourth Amendment excessive force claims in a case where plaintiff sought damages for injuries sustained from police officers use of physical force).  And while Ms. Martin is right that school officials can be held liable for unreasonable searches and seizures, the cases are clear that what may be impermissible in other contexts is not necessarily so under school auspices. "[T]o qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." *Couture v. Bd. of Educ. of the Albuquerque Pub. Sch.*, 535 F.3d 1243, 1251 (10th Cir. 2008). Seizures are thought of "differently in the school context, as students are generally not at liberty to leave the school building when they wish." *Id.* at 1250-51. "To balance the students' privacy rights with the schools custodial and tutelary responsibility for children a seizure need only be justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quoting *Bd. of Educ. Pottawatomie County v. Earls*, 536 U.S. 822, 829-30 and *Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989) (internal quotation marks omitted)). The Court need not decide, however, whether Ms. Martin's allegations would satisfy these standards because even if they do, Mr. Pelkey is entitled to qualified immunity.

### B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Reavis ex rel. Estate of Coale v. Frost*, 967 F.3d 978, 984 (10th Cir. 2020) (internal quotation marks omitted). Once asserted, qualified immunity creates a presumption of immunity for the individual defendants. *Id.* Qualified immunity shelters all but malicious or plainly incompetent government officials from "liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731 (2011).

Since Mr. Pelkey has asserted the qualified immunity defense, "[Ms. Martin] must show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (quotations omitted). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). Because Ms. Martin has not met her burden on the second inquiry, the Court need not answer the first. *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016).

A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U. S. 7, 11 (2015) (*per curiam*) (internal quotation marks omitted). The Tenth Circuit has noted that "the


more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. ___, ___ (2021) (*per curiam*) (slip op., at 4) (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (*per curiam*)). Courts must avoid defining "clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. ___, ___ (2021) (*per curiam*) (slip op., at 5). "Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as [she] maintains." *Holmes*, 830 F.3d at 1135 (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2016) (internal quotations marks omitted).[2]

Ms. Martin does not identify any such decisions. She points out that "schools have been aware that the Fourth Amendment applies to school officials including bus drivers" and declares that "any decisions regarding the Fourth Amendment, even in a law enforcement setting, are equally applicable to school bus drivers and aides." (Doc. 23 at 8.) She reiterates that the "objectively unreasonable" standard is well-established and that "outrageous conduct is always unconstitutional." (Doc. 23 at 7-9.) But even if so, these sorts of statements are well beyond the

---

[2] The Supreme Court has repeatedly called into question whether even published circuit precedent is sufficient to meet this standard. *Rivas-Villegas*, 595 U.S., at ___ (slip op., at 4); *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). Nevertheless, this Court is bound by the Tenth Circuit's precedents saying so.

6

Karman line of generality the Supreme Court consistently reminds plaintiffs and lower courts they must remain below. *See Bond*, 595 U.S., at ___ (slip op., at 5); *Rivas-Villegas*, 595 U.S., at ___ (slip op., at 4). They do not provide anything like the kind of clarity about the options available to a school bus driver confronting a disruption that would put any reasonable driver on notice that Mr. Pelkey's conduct violates the Constitution.

When it comes to specific precedents, Ms. Martin cites to a handful of cases: *Couture v. Bd. of Educ. of the Albuquerque Pub. Sch.*, 535 F.3d 1243 (10th Cir. 2008), *Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051 (10th Cir. 2012), *Mick by & Through Mick v. Brewer*, 76 F.3d 1127 (10th Cir. 1996), and *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009). None satisfies her burden.

In *Couture*, the Tenth Circuit explained that placing a disruptive student in a timeout room during class was not a violation of the Fourth Amendment because the timeout practice was used to control the child's behavior, and the plaintiff's mother participated in the development this mechanism as part of a larger behavioral plan. 535 F.3d at 1256. *Couture* did not find a constitutional violation, and its facts are not particularly similar to ours, so it is not helpful to proving that Mr. Pelkey had fair notice that his actions violated the Fourth Amendment.

Similarly, in *Ebonie S.*, the Tenth Circuit held that a classroom desk confinement mechanism did not rise to an unreasonable seizure under the Fourth Amendment. 695 F.3d at 1057. Again, even if a case that does not find a constitutional violation can create clearly established precedent about what *is* a violation (a dubious proposition) the facts of *Ebonie S.* are only distantly related to those alleged here. The case does not provide the sort of notice to those in Mr. Pelkey's position that they may

7

not stop a school bus to address a disruption and prevent students from leaving before their scheduled stops. *See Bond*, 595 U.S., at ___ (slip op., at 5).

And the facts here are not at all like *Brewer* or *Safford*. In *Brewer*, the court addressed a law enforcement officer who pulled a woman out of her car and brutally beat her on the street while two other law enforcement officials may have watched. 76 F.3d at 1130-31, 1137. *Brewer* is patently not on-point. In *Safford*, the Supreme Court held that a strip search of a minor student at school was unconstitutional because the school officials believed she had over-the-counter pills hidden on her person. 557 U.S. at 368. Ms. Martin alleges a seizure by holding children on a school bus, not a search, let alone a strip search, so this case too is unhelpful in meeting her burden of showing the law is clearly established as to school bus detentions.

Ms. Martin generally argues that "school districts and school officials are not be (sic) entitled to qualified immunity simply because there are fewer decisions applying the Fourth Amendment in a school setting." (Doc. 23 at 8.) If it were merely that there are fewer cases on-point, this might be a viable argument. But she has pointed to *no* cases that provide the sort of on-point guidance required to overcome a qualified immunity defense. *See Bond*, 595 U.S., at ___ (slip op., at 5); *Holmes*, 830 F.3d at 1135. It is Ms. Martin's burden to show that the law in this area is clearly and specifically established.[3] She has failed to do so, and thus Mr. Pelkey is entitled to qualified immunity.

---

[3]   Ms. Martin also argues that school bus drivers should not receive the same deference as teachers but provides no authority for that proposition. (Doc. 23 at 9.)  And in fact, the Supreme Court has said qualified immunity, and its requirement to show a violation of clearly established law, apply to all state and local officials. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## II. State Tort Claims - Supplemental Jurisdiction

Federal court supplemental jurisdiction over state law claims may be declined when all claims giving it original jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3). "[T]he Tenth Circuit has indicated that if federal claims are dismissed before trial, as in the instant case, leaving only issues of state law, the Court should decline to exercise jurisdiction over the state claims." *Fitzgerald v. Corr. Corp. of Am.*, 2009 WL 1196127, at *14-15 (D. Colo. 2009) (citing *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1264 (10th Cir. 2003)).

Here, the remaining claims are state tort law claims: assault, battery, negligence, and intentional infliction of emotional distress. (Doc. 16 at 9-11.) The Court recognizes the burden on Ms. Martin to start anew in state court, but also finds Defendants' arguments for dismissal of those claims under state law persuasive. Given the centrality of fairly technical state law questions, including the applicability of the Colorado Governmental Immunity Act, this Court declines to exercise jurisdiction over Ms. Martin's state law claims.

## CONCLUSION

Defendants' motion to dismiss (Doc.19) is GRANTED.

Dated: October 27, 2021.    BY THE COURT:

_____
Daniel D. Domenico
United States District Judge